[No. 20490.  Department One.  September 13, 1927.]

## J. T. HAYES REALTY COMPANY, *Appellant*, v. HORACE TARBOX *et al., Respondents.*[1]

[1] ELECTION OF REMEDIES (3)—TRUSTS (38-1)—ACTS CONSTITUTING ELECTION—RECONVEYANCE OF TRUST PROPERTY TO CREATOR OF TRUST. Where a trust agreement gave the *cestui que trust* inconsistent alternative remedies—(1) to take back the property on failure of the trustee to meet the obligations, and (2) to require the trustees to sell the property and apply the proceeds to meet the obligations, with a remedy over for any deficiency—acceptance of a reconveyance is an election of remedies, and satisfies, and bars any remedy upon, the obligations of the trustees.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered June 18, 1926, on the pleadings and opening statement of counsel, dismissing an action on contract, tried to the court. Affirmed.

*John F. Reed* and *David J. Williams,* for appellant.

*Chas. D. Donnelly* and *Reynolds, Ballinger & Hutson,* for respondents.

FULLERTON, J.—The appellant J. T. Hayes Realty Company is a corporation organized pursuant to the laws of this state. The respondents Horace Tarbox, Ruth Tarbox Gray, Bessie T. Shoemaker, Winifred T. Kruse and M. D. Tarbox, together with E. J. Browne, W. C. Moore, J. A. Cochrane, Cuthbert D. Potts and S. M. Jones, were on August 31, 1920, and for sometime prior thereto, the owners of the capital stock of the corporation. The number of shares owned by each of the groups is not disclosed by the record, but it appears that the respondent group held a majority of the stock, and were in control of the corporation.

[1]Reported in 259 Pac. 30.

Differences arose between the groups over the management of the corporation, and these differences reaching an acute stage, the parties, on August 31, 1920, entered into an agreement of settlement. The agreement was in writing and reads as follows:

"This Agreement, made and entered into this 31st day of Aug. 31, 1920, by and between Horace Tarbox, Ruth Tarbox, Bessie T. Shoemaker, Winifred T. Kruse, and M. D. Tarbox, herein designated as the parties of the first part, and E. J. Brown, W. C. Moore, J. A. Cochran, Cuthbert D. Potts, and S. M. Jones, herein designated as the parties of the second part,

Witnesseth:

"That Whereas, the above parties are the holders and owners of all of the stock of the J. T. Hayes Realty Company, a corporation of Seattle, Washington; and

"Whereas, it is the desire of all of the parties to distribute the property belonging to said J. T. Hayes Realty Company among the stockholders in proportion to their several holdings; and, in event a distribution of the property cannot equitably be made, that the property be sold and the cash distributed; and, for the purpose of working out the said distribution the following valuations of the properties, have been agreed upon:

"Parcel 1.

"Lots 3 and 4, Block 8, Boston Heights Add..$5,000.00
"Lots 5 & 6, Boston Heights Add............ 4,000.00
"Lot 2, Block 4, Leschi Heights Add........ 1,500.00
"South ½ of Lot 2 & all of 3, Block 3, Moore's
   Add. to Rainier Boulevard Park Add.
   subject to a mortgage of $1,300 equity...   300.00
                                              ─────────
      Making a total of.................$10,800.00

"Parcel 2.

"Lot 7, Block 1, Boston Heights Add., subject
   to a mortgage of $3,000.00 equity........$5,500.00
"Lots 1, 2, 3, and 4, Block 6, H. E. Orr Park
   Add. ................................... 2,500.00

"Due on account of contract of sale of the
 South 37½ ft. of the East 80 ft., Lot 10, in
 Block 52, of Bigelow's Add. to Seattle... 2,000.00
"Lot 1, Block 4, Leschi Heights Add., Seattle. 1,500.00

  Making a total of.................$11,500.00

"WHEREAS, it has been agreed between the parties
above named that the parties of the first part will
accept as their portion of the property that described
in Parcel 1, (assuming and agreeing to pay the mort-
gage of $1,300.00 on the property therein described in
Moore's Addition, and holding the parties of the
second part harmless on account thereof), and make
distribution thereof among themselves, and the parties
of the second part will accept as their portion of the
property that described in Parcel 2, and will make
distribution thereof among themselves. And

"WHEREAS, prior to date hereof the parties of the
first part have caused to be transferred to Horace
Tarbox Lots 3, 4, 5, & 6, Bk. 8 of Boston Heights Addi-
tion to the City of Seattle, described in Parcel 1 hereof,
receiving his note in payment therefor; and

"WHEREAS, it has been agreed that the parties of the
second part shall hold the title to the properties de-
scribed in Parcel 2, in the name of the company until
such time as they can agree upon the assets and the
disincorporation of the company. And

"WHEREAS, upon an audit and examination of the
books and accounts of the company it has been agreed
that there is a general indebtedness of the company of
$924.88 over and above the cash on hand, and that
there are no funds with which to pay such indebted-
ness, and that there is due the company from the
parties of the first part the sum of $363.78.

"WHEREAS, there is a dispute between the said
Horace Tarbox, and the said Cuthbert D. Potts, as to
the ownership of 446 shares of the capital stock of the
said company which said shares of stock stand on the
books of the company in the name of the said Cuth-
bert D. Potts, but in the distribution herein referred
to assumed to be the property of Horace Tarbox.

"Now, THEREFORE, in consideration of the mutual promises herein contained, it is agreed,

"(1.)   That there is due and owing to the company from the parties of the first part in addition to the sum of $363.78, one-half of the general indebtedness of the said company, to-wit: $462.44, making a total indebtedness due the company from the parties of the first part of $826.22, with interest on the same from August 1st, 1920, at the rate of seven per cent per annum until paid.

"(2.)   That the stock held by the parties of the first part be endorsed in blank and surrendered to the parties of the second part, and the note of Horace Tarbox held by the company be cancelled and returned to said Horace Tarbox.

"(3.)   That on or before two years from date the parties of the first part will:

"(a)   Pay to the said J. T. Hayes Realty Company the sum of $826.22, with interest at the rate of seven (7%) per cent per annum from August 1st, 1920, payable annually.   And

"(b)   Will obtain from the holder of said note and mortgage of $1,300 a release of the J. T. Hayes Realty Company from all liability on account thereof.   And

"(c)   Will obtain from Cuthbert D. Potts, the said 446 shares of the capital stock of the J. T. Hayes Realty Company now standing in the name of Potts and claimed by said Horace Tarbox, said stock to be endorsed in blank and turned over and surrendered to the parties of the second part.

"(4.)   That to secure the fulfillment of the promises and agreements by the first parties, as set forth in paragraph three above, the J. T. Hayes Realty Company is to convey Lot 2, Block 4, Leschi Heights Addition and Lots 2 and 3, Block 3, Moore's Addition to Rainier Boulevard Park Addition to C. A. Riddle in trust to be by said Riddle conveyed to the first parties upon the fulfillment of said promises and agreements; but in event the parties of the first part shall fail to fulfill the said promises and agreements or any of them, within the said two year period, then said property to be reconveyed by the said Riddle to the J. T.

Hayes Realty Company and to become the property of the said company.

"(5.)   That the said property to be held by the said C. A. Riddle in trust and by said C. A. Riddle sold upon such terms and conditions as by him shall seem advisable and the proceeds of such sale applied to the payment of the indebtedness set forth in paragraph 3-a above, and the balance held in trust by said Riddle in lieu of said property;

"(6.)   That the said 446 shares of stock in dispute between the said Horace Tarbox and Cuthbert D. Potts are of the agreed value of $400. and the payment by the said Horace Tarbox of the sum of $400. to the said J. T. Hayes Realty Company shall release the first parties from the agreement to return the said stock.

"(7.)   That the financial condition of the company shown by the audit of the books and as herein agreed upon, is based upon the books of the company and the values of the property herein set forth, and in event any further liabilities of the company should become known it is agreed that the parties of the first part will pay to the J. T. Hayes Realty Company upon demand their proportion of the obligation or loss; and that the properties hereinbefore described in paragraph 3-a are to be held by the said C. A. Riddle in trust until said loss or liability shall be fully paid; provided, that any loss occasioned or any obligation incurred by any direct contract liability entered into by the company prior to the election of the present board of trustees and unknown to the parties of the second part or the present board of trustees at the present time, to-wit: August 26th, 1920, shall be borne, paid and discharged by the parties of the first part.

"(8.)   This settlement and adjustment is made as of date of August 1st, 1920.''

The present action was instituted by the appellant against the respondent stockholders to recover as for a breach of the agreement. It is alleged in the complaint that the respondents did not perform their part of the agreement in the following particulars: that

they did not pay the sum of $826.22, with interest; that they did not obtain from the holder of the note and mortgage of $1,300 a release of the appellant from liability thereon, and because thereof the appellant was compelled to pay and did pay the sum of $698.92 to protect itself from such liability; and that it did not obtain from Cuthbert D. Potts and endorse to the appellant the 446 shares of stock standing in his name and claimed by Horace Tarbox, nor pay to the appellant the sum of $400 in lieu thereof. It is further alleged that the trustee Riddle did not sell the property conveyed to him in trust, and that, upon the breach of the agreement by the respondents, it demanded of Riddle a reconveyance of the property; that Riddle did so reconvey the property to it, whereupon it sold it upon its own account, realizing from such sale the net sum of $564.14. It demanded judgment against the respondents for the total of the sums alleged to accrue to it by reason of the breach of the contract, less the sum received from the sale of the property conveyed to it by the trustee Riddle.

The respondents, answering the complaint, denied any breach of the contract on their part, and, as an affirmative defense, set up the following:

"For a further answer to said complaint and by way of an affirmative defense defendants allege and show to the court that the above named defendants did make, execute and deliver the contract mentioned in the said complaint and marked Exhibit 'A' as a full and complete compromise and settlement and adjustment of all the differences described in paragraph three of said complaint, and that the said property, to-wit: Lot 2, Block 4, of Leschi Heights Addition was deeded by one C. A. Riddle to the above named plaintiff and accepted by the said plaintiff as a full settlement and payment of all debts or obligations due or owing by the above named defendants to the above

named plaintiff, and as a full and final settlement of all the terms and agreements to be performed on the part of the said defendants and others as are set forth in said Exhibit 'A'."

The reply was a general denial of the affirmative matter in the answer.

The cause was brought on for trial before the court sitting without a jury. The appellant's counsel thereupon made his opening statement of the issues and the matters he expected his evidence to prove, whereupon the respondents moved for a judgment in their favor. This motion, the court granted, entering a judgment of dismissal with prejudice.

[1] The statement of counsel, with the colloquy that followed, disclosed that there was no controversy as to the facts between the parties. Certain matters were made clear that the pleadings left obscure—that is to say, it appeared that, upon the execution of the agreement, the respondents endorsed in blank the stock they held in the corporation and delivered it to their co-trustees, and that such co-trustees thereupon assumed control and management of the corporation; that the corporation cancelled and surrendered to Horace Tarbox the promissory note he had executed and delivered to it; that the corporation conveyed to the respondents all of the property described in parcel 1 of the agreement, save that portion conveyed in trust to Riddle, and that the specific property conveyed to Riddle, which was covered by the mortgage, was taken by the mortgagee under a foreclosure proceeding, and that the sums paid by the appellant on account thereof were paid either to prevent, or in satisfaction of, a deficiency judgment arising out of the foreclosure—but it developed that, at the time Riddle conveyed the trust property back to the corporation, there was no specific

agreement between the parties with respect to the conveyance; that there was a demand for a reconveyance, and a compliance therewith, but no specific agreement that the appellant could, after the conveyance, sell the property and apply the proceeds of the sale *pro tanto* to the satisfaction of the obligations assumed by the respondents on the execution of the agreement.

The question of law involved is, therefore, whether the conveyance of the trust property by Riddle to the appellant operated as a satisfaction of the obligations assumed by the respondents. The trial court held that it did, and it was on this ground that it rested its judgment. It construed the contract to give the appellant alternative remedies on the failure of the respondents to meet the obligations assumed by them; that under paragraph 4 of the contract, it could, on such a failure, require a reconveyance of the property to it, in which case it must take it in satisfaction of the obligations assumed; that under paragraph 5, it could require the trustee to sell the property and apply the proceeds of the sale to the satisfaction of the obligation, in which case it might have a remedy over, should the proceeds of the sale be insufficient to satisfy them; and that, having chosen the first of the alternative remedies, it is precluded from any further proceedings against the respondents.

It is our opinion that the trial court correctly interpreted the contract. It is true that the contract does not in terms provide that the remedies afforded by paragraphs 4 and 5 are alternative remedies, but we cannot conceive that they can be given any other meaning and at the same time give the contract effect. They are utterly inconsistent the one with the other, and both remedies could not be enforced. The appellant could not, in other words, require the trustee to

convey the property to it under paragraph 4, and itself perform the functions vested in the trustee under paragraph 5. This right is not given to it by the terms of the contract, and it seems to us that it would be a perversion of the terms of the contract to construe it as implying the condition.

Since, therefore, there were inconsistent alternative remedies provided in the contract, and since it was the privilege of the appellant to require the contract to be enforced, it follows that the appellant had the choice of remedies, and, having chosen to take the property in lieu of the obligations, it must abide by its choice.

The judgment is affirmed.

MACKINTOSH, C. J., MITCHELL, FRENCH, and MAIN, JJ., concur.